UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONGRESS CONSTRUCTION CO., INC., | : : | |
| Plaintiff | : | NO. 3:05cv1665 (MRK) |
| v. | : : | |
| GEER WOODS, INC., | : : | |
| Defendant. | : | |

## RULING AND ORDER

Congress Construction Co. ("Congress") and Geer Woods, Inc. ("Geer") entered into a standard form American Institute of Architects contract, which contained a clause providing for arbitration of disputes under the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA"). After a dispute developed, Congress filed a demand for arbitration with the AAA, and Geer filed several counterclaims, including counterclaims that Congress characterizes as seeking consequential damages. Three arbitrators have now been selected, and the arbitration is proceeding forward, with hearings scheduled.

Congress filed this action to enjoin Geer from presenting any claim to the arbitrators for consequential damages, because Congress believes that the parties' contract expressly precludes arbitration of consequential damage claims. Verified Complaint [doc. # 1]. On December 15, 2005, the Court held a hearing and argument on Congress' consolidated requests for preliminary and permanent injunctive relief. At the close of the hearing, the Court ruled that it was for the arbitrators to decide (at least in the first instance) whether Geer's claims for consequential damages may be arbitrated. The Court stated its intention to follow its oral ruling with a written explanation of its decision. This Ruling and Order is intended to serve that purpose.

## I.

The Court assumes familiarity with the relevant underlying facts, none of which is disputed. The threshold issue is who decides the question of whether the parties intended to arbitrate consequential damage claims – this Court, or the arbitrators? Having considered the matter at length, the Court concludes that the question of arbitrability is one that the arbitrators must decide.

Both parties agree that the governing standard for determining who decides arbitrability is succinctly set forth in the Second Circuit's decision in *Bell v. Cendant Corp.*, 293 F.3d 563 (2d Cir. 2002), which in turn relies heavily on the Supreme Court's decision in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995):

> Where the scope of an arbitration agreement is ambiguous, the Federal Arbitration Act's policy favoring arbitration requires that any doubts . . . be resolved in favor of arbitration. But where the ambiguity relates to *who* determines arbitrability – that is, the arbitrability of the question of arbitrability – the Act's presumption is reversed and a court ordinarily decides the question. Parties to an arbitration agreement may provide that the arbitrator, not the court, shall determine whether an issue is arbitrable. But the issue of arbitrability may only be referred to the arbitrator if there is *clear and unmistakeable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.

*Bell*, 293 F.3d at 566 (internal citations and quotations omitted). For two reasons, the Court concludes that the parties in this case intended the arbitrators to decide issues of arbitrability, including the arbitrability of consequential damage claims.

## A.

First, the parties' contract explicitly incorporates the AAA's Construction Industry Arbitration Rules (the "Construction Rules") and those rules assign issues of arbitrability to the arbitrators. Thus, Section 4.6.2 of the parties' contract provides as follows:

> Claims not resolved by mediation shall be decided by arbitration which, unless parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect.

Verified Complaint [doc. # 1], Ex. 1. Rule 9(a) of the AAA's Construction Rules states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Affidavit of Jerrold A. Olanoff, dated October 25, 2005 [doc. # 6] ("Olanoff Affidavit"), Ex. B.

The Second Circuit has repeatedly held that when, as here, parties incorporate by reference arbitral rules that, like Rule 9(a), permit the arbitrator to rule on its own jurisdiction, the arbitrator must decide issues of arbitrability. For example, in *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205 (2d Cir. 2005), the Second Circuit recently addressed an arbitration provision calling for arbitration under the AAA's Commercial Arbitration Rules. The Second Circuit noted that the AAA's Commercial Arbitration Rules provided that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" – language identical to that found in Rule 9(a) of the Construction Rules. Commenting on the effect of that language, the circuit court noted:

> We have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.

*Id.* at 208. Likewise, in *The Shaw Group, Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115 (2d Cir. 2003), the Second Circuit held that similar language in the rules of the International Chamber of Commerce provided clear and unmistakable evidence of the parties' intent to submit questions of arbitrability to the arbitrator. *Id.* at 122-23 (citing with approval *Daiei, Inc. v. United States Shoe*

*Corp.*, 755 F. Supp. 299, 303 (D. Haw. 1991) ("[E]ven where an agreement does not specifically assign the determination of arbitrability to the arbitrator, a provision to have all disputes resolved according to ICC rules evidences the parties' agree[ment] to let the arbitrator decide questions of arbitrability . . . ." (internal quotation marks omitted)); *see also Paine Webber Inc v. Bybyk*, 81 F.3d 1193, 1202 (2d Cir. 1996).

In the face of this clear Second Circuit precedent, Congress does not seriously dispute that if the parties' contract incorporated by reference Rule 9(a), that would provide clear and unmistakable evidence that the parties intended the arbitrators to decide questions of arbitrability. Instead, Congress argues that the contract did not incorporate Rule 9(a) by reference because at the time the parties entered into their contract, the AAA's rules did not include Rule 9(a). It is undisputed that the parties signed their contract in May 2001, and that the AAA did not amend the Construction Rules to include Rule 9(a) until two months later, in July 2001. Verified Complaint [doc. # 1], Ex.1; Olanoff Affidavit, Exs. A and B. Focusing on the words "currently in effect" at the end of Section 4.6.2 of the parties' contract (quoted above), Congress asserts that the parties intended to incorporate the AAA rules as they existed on May 2001 and that those rules did not include Rule 9(a).

Congress' argument is plausible, but unpersuasive. The reason is that the Construction Rules in effect at the time the parties signed their contract also contained the following provision in Rule 1: "These rules *and any amendment* of them shall apply in the form obtaining at the time the demand for arbitration or submission is received by the AAA. The parties by written agreement may vary the procedures set forth in these rules." Olanoff Affidavit, Ex. A (emphasis added). By incorporating Rule 1 – which was "currently in effect" at the time of the parties' contract – the parties specified that

4

their arbitration would be governed by the AAA rules *and* any amendments "obtaining at the time the demand for arbitration" is received. In other words, by incorporating the then-existing AAA rules, the parties also agreed that the AAA could amend the rules from time to time and that any arbitration would be governed by the rules that existed at the time the demand for arbitration was filed. Since it is undisputed that at the time Congress submitted its demand for arbitration in 2004, Rule 9(a) gave arbitrators the power to decide questions of arbitrability, in accordance with *Contec* and *The Shaw Group*, it is the arbitrators, not the Court, who must decide questions of arbitrability. *See also Commonwealth Edison Co. v. Gulf Oil Co.*, 541 F.2d 1263, 1272-73 (7th Cir. 1976).

What Congress would like the Court to do is to read the phrase "currently in effect" as freezing the rules that will govern any later arbitration – in other words, to read the contract as if the parties had agreed to be bound by the AAA rules "currently in effect *without regard to any future amendments*." The parties certainly could have said that if that was their intent. But they did not do so. To the contrary, the parties expressly incorporated a "currently in effect" rule – Rule 1 – that explicitly allowed amendments and did not freeze the AAA's rules. Accordingly, the parties agreed to be bound by any amendments adopted prior to the filing of an arbitration demand, and one such amendment gives the arbitrators the power to decide questions of arbitrability.[1]

---

[1] In support of its argument for freezing the rules in effect, Congress relies heavily on a footnote in *Marsh v. Loffler Housing Corp.*, 102 Md. App. 116, 130 n.9, 648 A.2d 1081,1088 n.9 (Md. Ct. Spec. App. 1994). The Court does not believe that a passing comment by the Maryland appeals court in that decision assists Congress or this Court. Ultimately, the Maryland court did not decide which rules governed (those in effect at the signing of the parties' contract or those in effect at the time of the demand for arbitration) because it was not required to do so. *Id.* Furthermore, the court did not discuss the effect of Rule 1.

**B.**

Second, and in any event, the language of the parties' arbitration clause is itself sufficient to permit the Court to conclude that it is for the arbitrators to decide issues of arbitrability. In their contract, the parties agreed to submit to arbitration "[a]ny Claim arising out of or related to the Contract . . . ." Verified Complaint [doc. # 1], Ex.1, § 4.6.1.[2]  The word "Claim" is defined broadly to include "a demand or assertion by one of the parties *seeking*, as a matter of right, adjustment or *interpretation of Contract terms*, payment of money, extension of time or other relief with respect to the terms of the Contract.  The term 'Claim' also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract." *Id.*, Ex.1, § 4.3.1 (emphasis added).

In several decisions, the Second Circuit has held that language similar to that contained in the Congress-Geer contract was sufficient to evidence a clear and unmistakable intent to place questions of arbitrability at the feet of the arbitrators, not courts.  For example, in *The Shaw Group*, the Second Circuit was faced with contractual language providing that "[a]ll disputes . . . concerning or arising out of" the contract were subject to arbitration. The court explained that "even absent an express

---

[2]  The contract language goes on to describe several exceptions, and from this, Congress argues that because the arbitration clause in the parties' contract contained language that Congress believes excepts consequential damage claims from arbitration, it is the Court, not arbitrators, who must decide whether consequential damage claims are arbitrable.  But Congress' argument confuses the threshold question of *who* decides arbitrability, with the substantive issue of whether the parties' contract excepts consequential damage claims from arbitration. In this opinion, the Court deals only with the former issue. The language in the arbitration clause regarding consequential damages – whatever its scope –  does not bear on that threshold issue of who decides the meaning and scope of the arbitration clause, including its exceptions. To the extent that the consequential-damage clause has any bearing on the relevant issue here, it is to demonstrate that the parties knew how to exclude an issue from the arbitrators' jurisdiction when they wanted to do so.

contractual commitment of the issue of arbitrability to arbitration, a referral of 'any and all' controversies reflects such a 'broad grant of power to the arbitrators' as to evidence the parties' clear 'inten[t] to arbitrate issues of arbitrability.'" *The Shaw Group*, 322 F.3d at 121 (quoting *Bybyk*, 81 F.3d at 1199-1200). Noting that the dispute between the parties in that case, including their arguments over arbitrability, concerned the interpretation of their contract, the Second Circuit had little difficulty concluding that the parties' arbitration clause was sufficiently broad to grant the arbitrators power to resolve issues of arbitrability.

It is true that the agreement in *The Shaw Group* was governed by New York law, while the parties' contract in this dispute is controlled by Connecticut law. However, there is nothing in *The Shaw Group* opinion to suggest that New York's law is anomalous in any way or different in any fundamental respect from Connecticut's law. Any doubts in that regard would in any event be resolved by the Second Circuit's decision in *Bell*. In *Bell*, the Second Circuit, applying Connecticut law, held that the following clause expressed an unmistakable intent to assign the question of arbitrability to arbitrators: "Any controversy arising in connection with or relating to this Agreement, any stock options . . . the Executive's employment or any services to be provided hereunder, or any other matter or thing, shall be determined and settled by arbitration . . . ." *Bell*, 293 F.3d at 565. Explaining its holding, the Second Circuit stated that "[u]nder Connecticut law, an intent to refer the matter to the arbitrator may be indicated by an express provision or through the use of broad terms to describe the scope of arbitration, such as 'all questions in dispute and all claims arising out of' the contract or 'any dispute that cannot be adjudicated.'" *Id.* at 568 (quoting *City of Bridgeport v.*

*Bridgeport Police Local 1159*, 183 Conn. 102, 104 (1981) (internal quotations omitted)).[3]

The parties' contract in this case is similar to the arbitration agreement in *The Shaw Group* and *Bell*. In particular, the definition of the word "Claim" in the parties' agreement is extremely broad and certainly encompasses all disputes regarding the interpretation of their contract, including, as here, a dispute about the interpretation of both the arbitration clause and the consequential damage waiver referenced in the arbitration clause.[4]

## II.

In conclusion, the Court wishes to emphasize what it has and has not decided. All the Court has concluded is that it is for the arbitrators to decide, at least in the first instance, whether the parties may arbitrate consequential damage claims. The arbitrators are free to decide that the parties did not intend to arbitrate consequential damage claims, a question on which this Court expresses no view.

---

[3] Relying on *Bridgewater Assoc., Inc. v. Oberoi*, No. 05 Civ. 4471, 2005 WL 2837464 (S.D.N.Y. Oct. 28, 2005), Congress argues that *Scinto v. Sosin*, 51 Conn. App. 222 (1998), not *City of Bridgeport*, represents the law of Connecticut, and that under *Sosin*, the parties' contractual language in this case is not sufficiently broad to evidence an intent to give questions of arbitrability to the arbitrators. However, the Second Circuit in *Bell* addressed this issue directly and expressly held that *City of Bridgeport*, and not *Sosin*, represented the law of the Connecticut. *Bell*, 293 F.3d at 569. This Court is bound to follow *Bell*'s interpretation of Connecticut law until the Second Circuit or the Connecticut Supreme Court say otherwise, and the arbitration clause in this case is quite similar in scope to that involved in *City of Bridgeport*. Moreover, if there were any question whether *Bell* is limited to the precise contract language presented in that case (which referred to arbitration of "any other matter or thing"), that question was answered in *The Shaw Group*, where the Second Circuit held that contractual language similar to that presented in this case was sufficient to evidence an intent to give the issue of arbitrability to the arbitrators. Notably, *Bridgewater Assoc.* does not discuss, or even cite, *The Shaw Group*.

[4] The arbitration clause, Section 4.6.1. provides: "Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5, shall . . . be subject to arbitration." Verified Complaint [doc. # 1], Ex.1. Subparagraph 4.3.10 states, "The Contractor and Owner waive Claims against each other for consequential damages arising out of or related to this Contract . . . ." *Id.*

The Court has also not decided, and expresses no view whatsoever on, all of the other questions raised by the parties' briefs, including, without limitation, whether any exception to arbitrating consequential damage claims extends beyond contractual claims to tort and CUTPA claims, whether the consequential damage provisions of the parties' contract are enforceable, and whether any or all of the damages Geer seeks in the arbitration include claims for consequential damages.

Having decided that the threshold question of arbitrability is one that the arbitrators must decide, the Court denies Congress' request for preliminary and permanent injunctive relief [docs. ## 1, 2] and directs the Clerk of the Court to enter a final judgment for Defendant and against Plaintiff on all of Plaintiff's claims. **The Clerk is also directed to close this file**.

                                          IT IS SO ORDERED.


                                      /s/      Mark R. Kravitz
                                                United States District Judge


Dated at New Haven, Connecticut: **December 29, 2005**.